IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ELIJAH McNEIL,                      )
                                    ) Civil Action
          Plaintiff                 ) No. 08-cv-01075
                                    )
     vs.                            )
                                    )
THE CITY OF EASTON;                 )
POLICE OFFICER PETER GUERRIER,      )
POLICE OFFICER ANTHONY CHANEY,      )
POLICE OFFICER DARREN SNYDER,       )
POLICE LT. DAVID BEITLER,           )
  In Their Official Capacities      )
  As Employees Of The               )
  Easton Police Department,         )
                                    )
          Defendants                )

                         *    *    *

APPEARANCES:

          LEONARD ZACK, ESQUIRE
               On behalf of Plaintiff

          DAVID J. MacMAIN, ESQUIRE and
          JANELLE E. FULTON, ESQUIRE
               On behalf of Defendants

                         *    *    *

## O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

          This matter is before the court on Defendants' Motion

for Summary Judgment.  Upon consideration of the Brief in Support

of Defendants' Motion for Summary Judgment ("Defendants' Brief"),

Plaintiff's Memorandum of Law in Opposition to Defendants' Motion

for Summary Judgment ("Plaintiff's Brief"), and the Statement of

Relevant Undisputed Facts in Support of Defendants' Motion for
Summary Judgment ("Undisputed Facts"), and for the reasons
articulated in this Opinion, I grant Defendants' Motion for
Summary Judgment and dismiss this action with prejudice.

## PROCEDURAL HISTORY

Plaintiff Elijah McNeil commenced this action on
March 4, 2008 by filing a Complaint against The City of Easton,
the Easton Police Department, Police Officer Peter Guerriere[1],
and various John and Jane Does individually and in their official
capacities as employees of the Easton Police Department.

On May 2, 2008, the named defendants filed the Motion
of Defendants, The City of Easton, the Easton Police Department,
and Officer Peter Guerrier, [to Dismiss] Portions of Plaintiff's
Complaint Pursuant to Fed.R.Civ.P. 12(b)(6).  On May 28, 2008, I
approved the parties' Stipulation for Extension of Time for
Plaintiff to Respond to Defendants' Motion to Dismiss, and
granted plaintiff an extension until June 16, 2008 to file an
amended complaint.

On June 16, 2008, plaintiff filed his amended
Complaint[2] against The City of Easton, Police Officer Peter

---

[1]    Plaintiff's original Complaint and amended Complaint both refer to
this defendant as Peter Guerrier.  Throughout their pleadings and briefs,
defense counsel refer to this defendant as Peter Guerriere.  Therefore, in
this Opinion, I shall use the spelling which defense counsel use to identify
their client.

[2]    Plaintiff titled both his original and amended complaints as
"Complaint".  To avoid confusion, I will hereafter refer to the amended
version as "Amended Complaint".

Guerriere, Police Officer Anthony Chaney, Police Officer Darren
Snyder, and Police Lieutenant David Beitler in their official
capacities as employees of the Easton Police Department.

In some respects plaintiff's Amended Complaint is
not entirely clear.  However, it appears to raise five
Section 1983 (42 U.S.C. § 1983) claims for alleged constitutional
violations[3]: (1) unlawful entry[4]; (2) false arrest[5]; (3) false

---

[3]     The Amended Complaint makes several references to defendants'
violation of the United States Constitution and plaintiff's Constitutional
rights.  The only references to specific constitutional provisions are
citations to the Fourth and Fourteenth Amendments in paragraph 61 of the Sixth
Cause of Action -- Municipal Liability (paragraphs 56-62) and in paragraph 64
of the Seventh Cause of Action -- Violation of Constitutional Rights Under
§ 1983 (paragraphs 63-65).

Concerning all five of plaintiff's Section 1983 claims, I have
considered each of them to be claims for alleged Fourth Amendment
constitutional violations: the unlawful entry being an unlawful search for,
and seizure of, the person; the false arrest, false imprisonment and excessive
force in effectuating an arrest being an unlawful seizure of the person; and
under the circumstances of this case, the malicious prosecution by a police
officer in connection with an arrest without probable cause, being an unlawful
seizure of the person, as well.

[4]     While the Amended Complaint is not a model of clarity, the only
cause of action where it could be argued that unlawful entry is alleged is the
First Cause of Action (paragraphs 42-47).  In paragraph 45 plaintiff alleges
that he "was denied his constitutional rights to be free from seizure, arrest
and imprisonment without probable cause and due process of law."  In the
preliminary "Factual Background and History" paragraphs of the Amended
Complaint (which plaintiff incorporates by reference into all seven causes of
action), plaintiff more clearly alleges unlawful entry in paragraphs 10, 14,
15 and 16.

[5]     Plaintiff alleges false arrest in the Amended Complaint in his
First (paragraphs 42-47), Third, Fourth and Fifth (paragraphs 53-55) Causes of
Action and in preliminary background paragraphs 17 and 18.

imprisonment[6]; (4) malicious prosecution[7]; and (5) excessive force[8].

Plaintiff also brings related <u>Monell</u>[9] claims against The City of Easton for failing to train, supervise, or otherwise correct the defendant officers' alleged unconstitutional conduct.[10]  Finally, plaintiff raises pendent state law claims for false arrest, false imprisonment, malicious prosecution, and assault and battery.[11]

---

[6]     Plaintiff alleges false imprisonment in the First, Third, Fourth and Fifth Causes of Action and in preliminary background paragraph 17.

[7]     Plaintiff alleges malicious prosecution in the Amended Complaint in the Third, Fourth, Fifth and Sixth (paragraphs 56-62) Causes of Action.

[8]     It could be argued that plaintiff alleges excessive force in the Seventh Cause of Action (paragraphs 63-65), and possibly in paragraph 45 of the First Cause of Action (see footnote 4, above), and possibly in paragraphs 59 and 60 of the Sixth Cause of Action of the Amended Complaint. Plaintiff also alleges excessive force in preliminary background paragraphs 3, 10, 12, 13, 15, 17, 21, 22 and 23.

[9]     <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

[10]     Plaintiff alleges <u>Monell</u> claims in the Amended Complaint in the Second (paragraphs 48-52) and Sixth Causes of Action and in preliminary background paragraphs 4, 5, 19, 20, 21, 22 and 23.

[11]     Plaintiff alleges false arrest, malicious prosecution and false imprisonment in the Third, Fourth and Fifth Causes of Action without specifying whether these are state or federal claims, or both.  Concerning the pendent state law claim for assault and battery, the only reference to a separate assault claim (as distinguished from use of excessive force in effectuating an arrest) are references to the "intentional assault" of plaintiff by defendant police officers in paragraphs 64 and 65 of the Seventh Cause of Action.

The Seventh Cause of Action is a Section 1983 claim for violation of plaintiff's federal Constitutional rights.  (State Constitutional rights are not enforceable in a Section 1983 action.  <u>Laney v. Farley</u>, 501 F.3d 577, 580 n.2 (6th Cir. 2007); <u>Flynn v. Sandahl</u>, 58 F.3d 283, 290 (7th Cir. 1995); <u>Malek v. Haun</u>, 26 F.3d 1013, 1016 (10th Cir. 1994).)  However, preliminary background paragraphs 10, 15 and 17 refer to police officers firing a taser gun at plaintiff and kicking him in the head.

Defendants' Motion for Summary Judgment was filed on behalf of all defendants on April 30, 2009, together with Defendants' Brief and Undisputed Facts.  Plaintiff filed his Affirmation in Opposition and Plaintiff's Brief on May 15, 2009, but did not file a statement of disputed material facts in response to defendants' Undisputed Facts.[12]

## JURISDICTION

Jurisdiction in this case is based upon federal question jurisdiction.  28 U.S.C. §§ 1331, 1343.  The court has supplemental jurisdiction over plaintiff's pendent state law claims.  See 28 U.S.C. § 1367.

## VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to plaintiff's claims allegedly occurred in the City of Easton in Northampton County, Pennsylvania, which is located within this judicial district.  28 U.S.C. § 118(a).

## STANDARD OF REVIEW

The court should grant summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

---

[12]    On May 15, 2009, plaintiff also filed the Affidavit of Joseph Pollini.  However, my September 9, 2009 Order struck the Affidavit of Joseph Pollini, and all references thereto, from Plaintiff's Brief because plaintiff did not disclose the identity and curriculum vitae of his intended expert to defendants until more than eight weeks after the deadline for expert testimony disclosures set by my February 3, 2009 Rule 16 Status Conference Order.

matter of law.  Fed.R.Civ.P. 56(c)(2); <u>Startzell v. City of
Philadelphia</u>, 533 F.3d 183, 192 (3d Cir. 2008); <u>see</u> <u>Anderson v.
Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202
(1986).

        The court must view all evidence and draw all
inferences in the light most favorable to the non-moving party,
and summary judgment is appropriate only if there are no genuine
issues of material fact.  <u>Startzell</u>, 533 F.3d at 192.  Only facts
that may affect the outcome of a case are "material."  <u>Anderson</u>,
477 U.S. at 248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211.

        Once the party moving for summary judgment has
satisfied its burden by showing that there are no genuine
disputes as to any material facts, the non-movant must provide
evidence to support each element on which it bears the burden of
proof.  <u>See</u> <u>Monroe v. Beard</u>, 536 F.3d 198, 206-207 (3d Cir.
2008); <u>Padillas v. Stork-Gamco, Inc.</u>, 186 F.3d 412, 414 (3d Cir.
1999).

        Plaintiff cannot avert summary judgment with
speculation or by resting on the allegations in his pleadings,
but rather must present competent evidence from which a jury
could reasonably find in plaintiff's favor.  <u>Ridgewood Board of
Education v. N.E. for M.E.</u>, 172 F.3d 238, 252 (3d Cir. 1999);
<u>Guinan v. A.I. DuPont Hospital for Children</u>, 597 F.Supp.2d 485,
493 (E.D.Pa. 2009) (Surrick, J.).

**FACTS**

Based upon the pleadings, record papers, exhibits, and defendants' Undisputed Facts, the relevant facts, viewed in the light most favorable to plaintiff, are as follows.[13]

---

[13]    My Rule 16 Status Conference Order dated February 3, 2009 directed any party filing a motion for summary judgment to file a brief, together with "a separate short concise statement, in numbered paragraphs, of the material facts about which the moving party contends there is no genuine dispute."  I further directed the moving party to "support each such material fact with specific citations to the record, and, where practicable, [to] attach copies of the relevant portions of the record."

In addition, my Order required any party opposing a motion for summary judgment to file a brief in opposition to the motion and "a separate short concise statement, responding in numbered paragraphs to the moving party's statement of the material facts about which the opposing party contends there is a genuine dispute, with specific citations to the record, and, where practicable, [to] attach copies of the relevant portions of the record."

Moreover, my Order provided that if the moving party failed to submit a concise statement, the motion might be denied on that basis alone. My Order further provided that "[a]ll factual assertions set forth in the moving party's statement shall be deemed admitted unless specifically denied by the opposing party in the manner set forth" by the court.

In this case, on April 30, 2009 defendants filed a statement of undisputed material facts in support of their motion for summary judgment (Document 27, Exhibit 1), but plaintiff did not file a statement of disputed material facts in response.

Requiring a statement of undisputed material facts and a responsive statement of disputed material facts is consistent with Federal Rule of Civil Procedure 56.  Rule 56 requires the movant to provide proof that there are no genuine issues of material fact, and requires the non-movant to "not rely merely on allegations or denials in its own pleading... [but to] set out specific facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e)(2).

In addition, Rule 83(b) of the Federal Rules of Civil Procedure provides:

> A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§ 2072 and 2075, and the district's local rules.  No sanction or other disadvantage may be imposed for noncompliance with any requirement not in federal law, federal rules, or the local rules unless the alleged violator has been furnished in the particular case with actual notice of the requirement.

(<u>Footnote 13 continued</u>):

At approximately 2:00 a.m. on October 14, 2007, plaintiff Elijah McNeil and his girlfriend, Pamela Davis, returned to plaintiff's home in Easton, Pennsylvania after a night of drinking and "got loud," turned the television on "loud," and engaged in "loud" sexual intercourse during which Miss Davis screamed.[14]  Plaintiff and Miss Davis were making "[l]ots of noise....  Two o'clock, three o'clock in the morning, lots of noise, surrounded by lots of senior citizens."[15]

At approximately 3:30 a.m., an unidentified woman called Northampton County's emergency 911 telephone line to report a domestic dispute in which a woman was calling for help.[16]  The 911 caller reported that "the male at the residence never lets the female come to the door when she needs help."[17]

Defendant Officers Peter Guerriere and Darren Snyder responded to plaintiff's residence, where they heard a woman

---

(Continuation of footnote 13):

       Plaintiff had notice of my requirement that he file a statement of disputed material facts, but he did not comply with it.

       Accordingly, because plaintiff did not specifically deny defendants' statement of undisputed facts, for purposes of the within motion I deem admitted all facts contained in defendants' Undisputed Facts.

[14]      Undisputed Facts at paragraph 4.

[15]      Undisputed Facts at paragraph 5.

[16]      Undisputed Facts at paragraph 2; Testimony of Officer Peter Guerriere ("Guerriere Testimony") at page 11, in Transcript of Proceedings, Summary Appeal, Commonwealth v. McNeil, Court of Common Pleas of Northampton County, Pennsylvania, case number SA 290-2007, April 1, 2008, Exhibit C to Undisputed Facts ("Summary Appeal Transcript").

[17]      Undisputed Facts at paragraph 3.

screaming and loud banging coming from the house.[18]  Based upon the nature of the 911 call and the loud noises coming from plaintiff's home, the officers believed that there was an assault in progress and were concerned for the woman's safety.[19]

Officer Snyder called for backup, and pursuant to Easton Police Department procedure, sought and obtained permission from defendant Lieutenant David Beitler to enter the residence without a warrant.[20]  Officers Guerriere and Snyder then entered plaintiff's home.

Officers Guerriere and Snyder checked the first floor of the home and went to the staircase leading to the second floor.[21]  Miss Davis went down to the first floor and was directed to sit down by Officer Guerriere who kept her within his view.[22]

Officer Snyder began to climb the stairs when plaintiff appeared at the top of the stairs and descended three steps.[23] Officers Guerriere and Snyder ordered plaintiff to come down the

---

[18]     Undisputed Facts at paragraph 8.

[19]     Undisputed Facts at paragraph 9.

[20]     Undisputed Facts at paragraphs 10-12.

[21]     Undisputed Facts at paragraph 13.

[22]     Undisputed Facts at paragraph 14; Easton Police Department Incident Investigation Report ("Police Report") dated October 15, 2007 at page 6, Exhibit A to Undisputed Facts; Testimony of Officer Darren Snyder ("Snyder Testimony"), Summary Appeal Transcript at page 27.

[23]     Undisputed Facts at paragraphs 14-15.

rest of the stairs, but plaintiff stopped and refused to comply.[24]  Plaintiff was very angry that the officers were in his home and told them that they would have to shoot him.[25]

Officer Snyder observed targets in the shape of a man's silhouette on the wall or a door with what appeared to be bullet holes from target practice.[26]  Officer Snyder was "very fearful" that plaintiff would obtain a weapon or barricade himself on the second floor, which plaintiff could have accomplished in a matter of seconds.[27]  The requested backup had yet to arrive, and Officer Snyder was "extremely concerned" for the safety of himself, Officer Guerriere, and Miss Davis.[28]

Plaintiff ignored the officers' commands and started to ascend the stairs back to the second floor, which was not yet checked by the police, and where plaintiff could have access to a weapon.[29]  Officer Snyder fired his taser, embedding its darts into plaintiff and delivering a five second electric discharge,

---

[24]     Undisputed Facts at paragraph 15.

[25]     Undisputed Facts at paragraph 16.

[26]     Undisputed Facts at paragraph 17.

[27]     Id.

[28]     Undisputed Facts at paragraph 18.

[29]     Undisputed Facts at paragraphs 19-20.

to immobilize plaintiff and to prevent him from reaching the second floor.[30]

Plaintiff fell to the floor with his hands underneath himself.[31]  After regaining control of his motor skills, plaintiff did not comply with Officer Snyder's commands to show his hands.[32]  Officer Snyder then delivered a second five second electric discharge from his taser, after which plaintiff complied and put his hands out to the side.[33]

Defendant Officer Anthony Chaney then arrived to provide backup, assisted Officer Snyder in handcuffing plaintiff, and left without further involvement in the incident.[34] Lieutenant Beitler arrived after Officer Chaney, but plaintiff did not see Lieutenant Beitler at his home.[35]  Before plaintiff was handcuffed, an unidentified officer kicked him in the back of the head.[36]

---

[30]     Undisputed Facts at paragraphs 20 and 22; Snyder Testimony at pages 31-32.

[31]     Undisputed Facts at paragraph 21.

[32]     Id.

[33]     Undisputed Facts at paragraphs 21-22; Snyder Testimony at pages 31-32.

[34]     Undisputed Facts at paragraph 24.

[35]     Undisputed Facts at paragraph 33; Police Report at pages 5 and 7.

[36]     Testimony of Elijah McNeil ("McNeil Testimony"), Summary Appeal Transcript at page 50.  At his summary appeal hearing in the related criminal proceeding, plaintiff McNeil testified that "one officer looked at the other

(Footnote 36 continued):

- 11 -

Upon searching the second floor, the officers found an unnamed male in his twenties.[37]

In accordance with Easton Police Department procedure, Officers Guerriere and Snyder took plaintiff to Easton Hospital for evaluation and removal of the taser darts.[38]  Plaintiff told hospital personnel that his "heart wasn't beating right."[39]

---

(Continuation of footnote 36):

officer, and then he ran up the steps.  Before he put the handcuffs on me, he kicked me in the back of my head."  Id.  See footnote 85, below.

In defendants' Undisputed Facts, paragraph 27, which is deemed admitted (see footnote 13, above), defendants assert: "Plaintiff claims that, before he was handcuffed, one of the Officers kicked him in the head, which the Officers emphatically deny.  Criminal Tr. at pp. 45, 50 (Exhibit C); dep. tr. Snyder at pp. 18-19 (Exhibit G)."  Accordingly, the "Undisputed" Fact is that there is a dispute over whether or not an unidentified officer kicked plaintiff in the head.  Ordinarily, such a dispute concerning a genuine issue of material fact would render summary judgment inappropriate.  See the "Standard of Review" section of this Opinion, above.

However, for purposes of defendants' summary judgment motion I have found as a fact that before plaintiff was handcuffed, an unidentified officer kicked him in the head.  I made this finding, not because it is undisputed (which it is not); but because, pursuant to the above standard of review I must view all evidence in the light most favorable to plaintiff as the non-moving party.

Nevertheless, as indicated in the analysis and legal authority discussed in the "Head Injury" subsection of the "Excessive Force" section, below, even though an officer kicked plaintiff in the head, defendants are entitled to summary judgment because plaintiff has not provided any evidence as to which officer kicked him in the head.  Because there is no dispute that the officer who kicked plaintiff is unidentified, there is no genuine issue of material fact on this point.  Hence, under the Third Circuit and district court opinions cited, summary judgment is appropriate.

[37]    Guerriere Testimony at pages 15-16; Snyder Testimony at pages 37, 38, and 40.

[38]    Undisputed Facts at paragraph 26.

[39]    Undated Deposition of Elijah McNeil ("McNeil Deposition") at page 129, Exhibit B to Undisputed Facts.

Plaintiff's hospital records make no mention of an observation of, or treatment for, an injury to plaintiff's head.[40]

After plaintiff was treated and released from Easton Hospital, Officer Guerriere took plaintiff to the police department for processing.[41]  Pursuant to Easton Police Department procedure, Lieutenant Beitler investigated Officer Snyder's use of force and photographed plaintiff's injuries, which consisted of the mark from the taser dart and a small scratch on the back of plaintiff's head.[42]  At the police department, plaintiff denied suffering any physical injuries.[43] However, plaintiff later reported that his "tissues were swollen."[44]

Officer Guerriere issued plaintiff a citation for disorderly conduct.[45]  On November 27, 2007, Magisterial District Judge Sandra J. Zemgulis of District Court 03-2-06 in Northampton County found plaintiff guilty of disorderly conduct.[46]  Plaintiff appealed, and a trial without jury was held before former

---

[40]   Undisputed Facts at paragraph 28.

[41]   Undisputed Facts at paragraph 29.

[42]   Undisputed Facts at paragraph 30.

[43]   Undisputed Facts at paragraph 32.

[44]   McNeil Deposition at page 130.

[45]   Undisputed Facts at paragraph 36.

[46]   Undisputed Facts at paragraph 37; see Transcript of Docket and Certification of Disposition, Exhibit L to Undisputed Facts.

President Judge Robert A. Freedberg of the Northampton County
Court of Common Pleas.[47]  President Judge Freedberg found
plaintiff not guilty of disorderly conduct.[48]

## DISCUSSION

### Section 1983

Plaintiff's constitutional claims are actionable
against defendants through 42 U.S.C. § 1983.  Section 1983 is an
enabling statute that does not create any substantive rights, but
provides a remedy for the violation of federal constitutional or
statutory rights.  Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir.
2000).  Section 1983 states:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen
> of the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in equity,
> or other proper proceeding for redress.

42 U.S.C. § 1983.

Thus, to state a claim under Section 1983, a plaintiff
must demonstrate that defendant, acting under color of state law,
deprived plaintiff of a federal constitutional or statutory
right.  Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908,

---

[47]    Undisputed Facts at paragraph 38.

[48]    Undisputed Facts at paragraph 40.

- 14 -

1913, 68 L.Ed.2d 420, 428 (1986); Chainey v. Street,
523 F.3d 200, 219 (3d Cir. 2008) (quoting Kaucher v. County of
Bucks, 455 F.3d 418, 423 (3d Cir. 2006)).

A defendant acts under color of state law when he
exercises power "possessed by virtue of state law and made
possible only because the wrongdoer is clothed with the authority
of state law."  West v. Atkins, 487 U.S. 42, 49,
108 S.Ct. 2250, 2255, 101 L.Ed.2d 40, 49 (1988); Bonenberger v.
Plymouth Township, 132 F.3d 20, 23 (3d Cir. 1997).

## Qualified Immunity

The defendant officers contend that qualified immunity
shields them from plaintiff's Section 1983 claims.  Qualified
immunity protects government officials from Section 1983 suits
under certain circumstances.  Qualified immunity exists to
protect officials exercising good faith in their discretionary
duties from the unreasonable burdens of litigation.  Any
potential good from suits against government officials for
discretionary acts is outweighed by the chilling effect such
litigation would have on legitimate government activities.  See
Butz v. Economou, 438 U.S. 478, 506, 98 S.Ct. 2894, 2911,
57 L.Ed.2d 895, 916 (1978); Karnes v. Skrutski, 62 F.3d 485, 499
n.13 (3d Cir. 1995).

To overcome an assertion of qualified immunity, a
plaintiff must satisfy a two-prong test.  The court must "decide

whether the facts, taken in the light most favorable to the plaintiff, demonstrate a constitutional violation" and "whether the constitutional right in question was clearly established." Couden v. Duffy, 446 F.3d 483, 492 (3d Cir. 2006).

Courts are no longer required to decide the first prong of this test before moving on to the second prong, but it is "often beneficial" for courts to apply the test in this order. Pearson v. Callahan, 555 U.S. ___, 129 S.Ct. 808, 818, 172 L.Ed.2d 565, 576 (2009).

The test for whether a constitutional right is clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." If the officer's mistake as to what the law requires is reasonable, the officer is entitled to qualified immunity. Couden, 446 F.3d at 492.

Qualified immunity is an immunity from suit, not merely a defense to liability. Pearson, 555 U.S. at ___, 129 S.Ct. at 818, 172 L.Ed.2d at 576; Saucier v. Katz, 533 U.S. 194, 200-201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272, 281 (2001). Accordingly, it is important to resolve questions of qualified immunity at the earliest possible stage of the litigation. Pearson, 555 U.S. at ___, 129 S.Ct. at 815, 172 L.Ed.2d at 573; Saucier, 533 U.S. at 200-201, 121 S.Ct. at 2156, 150 L.Ed.2d at 281.

However, the Third Circuit has explained that

> the importance of resolving qualified immunity
> questions early is in tension with the reality
> that factual disputes often need to be resolved
> before determining whether defendant's conduct
> violated a clearly established constitutional
> right....  A decision as to qualified immunity is
> premature when there are unresolved disputes of
> historical facts relevant to the immunity
> analysis.

Phillips v. County of Allegheny, 515 F.3d 224, 242 n.7 (3d Cir.
2008) (citing Curley v. Klem, 499 F.3d 199 (3d Cir. 2007))
(internal punctuation omitted).

The normal principles of summary judgment apply when
qualified immunity is at issue.  It is inappropriate to grant
summary judgment if there are material factual disputes as to
whether a constitutional violation has occurred or whether the
constitutional right is clearly established.  See Curley,
499 F.3d at 208; Estate of Smith v. Marasco, 430 F.3d 140, 148
n.3 (3d Cir. 2005).

Accordingly, I examine plaintiff's Section 1983 claims
of unlawful entry; false arrest, false imprisonment, and
malicious prosecution; and excessive force to determine whether
the defendant officers are entitled to qualified immunity.
Because plaintiff has failed to create any genuine issues of
material fact as to whether defendants violated his
constitutional rights, each defendant officer is entitled to
qualified immunity.

**Unlawful Entry**

As noted above, plaintiff's Amended Complaint is unclear in many respects.  Defendants note correctly that plaintiff's seven enumerated causes of action do not include a claim for unlawful entry.[49]

However, plaintiff alleges that the defendant officers "forcefully entered the Plaintiff's home via the side door without just cause, provocation or threat of any nature whatsoever; without any and/or adequate identification and without prior warning and/or adequate prior warning," and "unlawfully broke down the plaintiff's side door."[50]

Plaintiff incorporated his factual allegations into his enumerated causes of action.[51]  Accordingly, I construe plaintiff's Amended Complaint as stating a claim for unlawful entry under Section 1983.

It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.  Brigham City v. Stuart, 547 U.S. 398, 403, 126 S.Ct. 1943, 1947, 164 L.Ed.2d 650, 657 (2006); United States v. McNeill, 285 Fed.Appx. 975, 979 (3d Cir. 2008).

---

[49]    Defendants' Brief at page 7.

[50]    Amended Complaint at paragraphs 14 and 15.

[51]    Amended Complaint at paragraphs 42, 48, 56, and 63.

- 18 -

An exception to the warrant requirement arises where "the exigencies of the situation" make the needs of law enforcement so compelling that the warrantless search is "objectively reasonable" under the Fourth Amendment.  Brigham City, 547 U.S. at 403, 126 S.Ct. at 1947, 164 L.Ed.2d at 657; McNeill, 285 Fed.Appx. at 979.

An action is reasonable if the circumstances, viewed objectively, justify the action.  The officer's subjective motivation is irrelevant.  Brigham City, 547 U.S. at 404, 126 S.Ct. at 1948, 164 L.Ed.2d at 658.

One exigency is the need to assist persons who are seriously injured or threatened with such injury.  Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.  Brigham City, 547 U.S. at 403, 126 S.Ct. at 1947, 164 L.Ed.2d at 657-658.

Both probable cause and exigent circumstances must exist to justify the warrantless intrusion.  United States v. Coles, 437 F.3d 361, 365 (3d Cir. 2006); see McNeill, 285 Fed.Appx. at 979.  In an emergency, the probable cause element is satisfied where officers reasonably believe a person is in danger.  United States v. Holloway, 290 F.3d 1331, 1338 (11th Cir. 2002); see United States v. Snipe, 515 F.3d 947, 952-

953 (9th Cir. 2008); <u>Koch v. Town of Brattleboro</u>, 287 F.3d 162,

169 (2d Cir. 2002).

As the United States Court of Appeals for the Eleventh

Circuit has explained:

> In the typical case, probable cause exists where
> the circumstances would lead a reasonable person
> to believe a search will disclose evidence of a
> crime....  In emergencies, however, law
> enforcement officers are not motivated by an
> expectation of seizing evidence of a crime.
> Rather, the officers are compelled to search by a
> desire to locate victims and the need to ensure
> their own safety and that of the public....  Thus,
> in an emergency, the probable cause element may be
> satisfied where officers reasonably believe a
> person is in danger.

<u>Holloway</u>, 290 F.3d at 1337-1338.

Here, the defendant officers' warrantless entry was

reasonable because they reasonably believed that a person was in

danger and in need of emergency assistance.  An unidentified

woman called Northampton County 911 to report a domestic dispute

in which a woman was calling for help.[52]  The 911 caller reported

that "the male at the residence never lets the female come to the

door when she needs help."[53]

Defendant Officers Guerriere and Snyder responded to

plaintiff's residence, where they "heard a woman screaming and

loud banging coming from the house."[54]  Based upon the nature of

---

[52]    Undisputed Facts at paragraph 2; Guerriere Testimony at page 11.

[53]    Undisputed Facts at paragraph 3.

[54]    Undisputed Facts at paragraph 8.

the 911 call, the screams, and the loud noises coming from plaintiff's home, the officers reasonably believed that there was an assault in progress and were concerned for the woman's safety.[55]

Other courts in the Third Circuit have found warrantless entries reasonable on similar facts.  In <u>United States v. Wadley</u>, the court found that the police officers' warrantless entry was reasonable where 911 calls reported a domestic dispute and a hostage situation, and police officers heard yelling and screaming from the home.  <u>United States v. Wadley</u>, 2007 U.S.Dist. LEXIS 94999 (W.D.Pa. December 28, 2007).

In <u>United States v. Holyfield</u>, 2005 U.S.Dist. LEXIS 35923 (W.D.Pa. August 26, 2005) (Hardiman, J.), the court found a warrantless entry reasonable where officers responded to a domestic violence call, heard arguing inside the apartment, and observed a man attempting to leave the apartment through a rear window.  Similarly, in <u>Daniels v. County of Media</u>, 2001 U.S.Dist. LEXIS 5437 (E.D.Pa. February 28, 2001) (Tucker, J.), this court found a warrantless entry reasonable where police officers responded to a 911 call reporting a domestic disturbance and observed the intoxicated husband in a heated conversation with his wife.

---

[55]     Undisputed Facts at paragraph 9.

Without citing authority, plaintiff argues that officers in individual cases must have corroborating evidence which, together with the anonymous call, adds up to probable cause.[56]  However, numerous courts have noted the reliability of anonymous emergency calls.[57]

An anonymous 911 call reporting an ongoing emergency is entitled to "a higher degree of reliability and requires a lesser showing of corroboration than a tip that alleges general criminality."  United States v. Simmons, 560 F.3d 98, 105 (2d Cir. 2009); accord, e.g., United States v. Hicks, 531 F.3d 555, 558-560 (7th Cir. 2008); United States v. Elston, 479 F.3d 314, 319 (4th Cir. 2007); United States v. Terry-Crespo, 356 F.3d 1170, 1176 (9th Cir. 2004).  "Thus, when an emergency is reported by an anonymous caller, the need for immediate action may outweigh the need to verify the reliability of the caller." Holloway, 290 F.3d at 1339.

As the United States Court of Appeals for the Third Circuit has explained: "The business of policemen and firemen is to act, not speculate or meditate on whether the report is

---

[56]     Plaintiff's Brief at page 3.

[57]     There is unrebutted evidence in the record that although the 911 caller was not identified, the police could determine where the call originated from the recording and learn the identity of the caller.  Guerriere Testimony at page 22.  Thus, the caller "was an innominate (i.e., unidentified) informant who could be found if [her] tip proved false rather than an anonymous (i.e., unidentifiable) tipster who could lead the police astray without fear of accountability."  United States v. Torres, 534 F.3d 207, 213 (3d Cir. 2008).  Accordingly, the unidentified 911 caller's report was more reliable than a truly anonymous tip.  See id. at 211.

correct.  People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process."  Torres, 534 F.3d at 212 (quoting United States v. Sanchez, 519 F.3d 1208, 1211 n.1 (10th Cir. 2008)).

This is particularly true when the emergency is a domestic disturbance.  Several courts have held that a 911 dispatch call indicating that a domestic disturbance is in progress at a residence can be sufficient to establish the existence of exigent circumstances unless circumstances at the residence indicate that warrantless entry is unnecessary. Wadley, 2007 U.S.Dist. LEXIS 94999 at *16-17 n.9; Daniels, 2001 U.S.Dist. LEXIS 5437 at *8.

Domestic disputes are particularly "combustible" and prone to "explode" into violence without warning.  United States v. Martinez, 406 F.3d 1160, 1164-1165 (9th Cir. 2005); Fletcher v. Town of Clinton, 196 F.3d 41, 50 (1st Cir. 1999); Tierney v. Davidson, 133 F.3d 189, 197 (2d Cir. 1998).  Therefore, courts have accorded great latitude to an officer's belief that a warrantless entry was justified by exigent circumstances when the officer had substantial reason to believe that one of the parties to the dispute was in danger.  Martinez, 406 F.3d at 1165 (quoting Tierney, 133 F.3d at 197); accord Fletcher, 196 F.3d at 50.

In any event, plaintiff's contention is misplaced because the defendant officers had corroborating evidence in this case.  As noted above, Officers Guerriere and Snyder "heard a woman screaming and loud banging coming from the house" upon their arrival.[58]

Plaintiff appears to suggest that his girlfriend was screaming while they were engaged in sexual intercourse, and that this creates a disputed issue of material fact.[59]  Even if there were a factual dispute in this regard, it is not a material one.  The parties agree that there were screams and loud noises coming from the house.  Police officers should not be required to attempt to parse the type of scream before responding.

As noted above, the United States Court of Appeals for the Third Circuit has warned that "[p]eople could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process."  Torres, 534 F.3d at 212.  Immunity is given not only for the protection of the officers, but also to protect victims of crime "so that officers will not have strong incentives to do nothing when they believe a domestic abuse victim is in danger."  Fletcher, 196 F.3d at 50-51.

Accordingly, the defendant officers' warrantless entry was reasonable and did not violate plaintiff's Fourth Amendment

---

[58]     Undisputed Facts at paragraph 8.

[59]     See Undisputed Facts at paragraph 4; Plaintiff's Brief at page 3.

rights.   The defendant officers are therefore entitled to qualified immunity, and I grant summary judgment in their favor on plaintiff's unlawful entry claim.

### False Arrest, False Imprisonment and Malicious Prosecution

Plaintiff brings claims for false arrest, false imprisonment, and malicious prosecution in violation of the Fourth Amendment under Section 1983.

The parties agree, correctly, that lack of probable cause is a required element of each of these claims.[60]  Murphy v. Bendig, 232 Fed.Appx. 150, 153 (3d Cir. 2007); Pulice v. Enciso, 39 Fed.Appx. 692, 696 (3d Cir. 2002); see Startzell v. City of Philadelphia, 533 F.3d 183, 203-204 (3d Cir. 2008); Groman v. Township of Manalapan, 47 F.3d 628, 634-636 (3d Cir. 1995).

Thus, plaintiff's claims for false arrest, false imprisonment, and malicious prosecution must necessarily fail if the defendant officers had probable cause to arrest him.  Such is the case here.

The proper inquiry is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense.  Groman, 47 F.3d at 634.  The United States Court of Appeals for the Third Circuit has explained that

---

[60]    See Defendants' Brief at pages 9-10; Plaintiff's Brief at pages 3-4.

> [p]robable cause is defined in terms of facts and
> circumstances sufficient to warrant a prudent man
> in believing that the suspect had committed or was
> committing an offense.... This standard is meant
> to safeguard citizens from rash and unreasonable
> interferences with privacy and to provide leeway
> for enforcing the law in the community's
> protection.

United States v. Boynes, 149 F.3d 208, 211 (3d Cir. 1998)

(internal punctuation omitted).

Here, the defendant officers had probable cause to
arrest plaintiff for disorderly conduct.  That offense is defined
in the Pennsylvania Crimes Code as follows:

> **(a) Offense defined.—**A person is guilty of
> disorderly conduct if, with intent to cause public
> inconvenience, annoyance or alarm, or recklessly
> creating a risk thereof, he:
>
>> (1) engages in fighting or threatening, or in
>> violent or tumultuous behavior;
>>
>> (2) makes unreasonable noise;
>>
>> (3) uses obscene language, or makes an
>> obscene gesture; or
>>
>> (4) creates a hazardous or physically
>> offensive condition by any act which serves no
>> legitimate purpose of the actor.

18 Pa.C.S.A. § 5503(a).

Unreasonable noise is that which is "not fitting or
proper in respect to the conventional standards of organized
society or a legally constituted community."  Commonwealth v.
Mastrangelo, 489 Pa. 254, 261, 414 A.2d 54, 58 (1980) (quoting
Commonwealth v. Greene, 410 Pa. 111, 113, 189 A.2d 141, 143

(1963)); <u>Commonwealth v. Maerz</u>, 879 A.2d 1267, 1270 (Pa.Super.

2005); <u>Commonwealth v. Gilbert</u>, 449 Pa.Super. 450, 454,

674 A.2d 284, 287 (1996).

  The Superior Court of Pennsylvania has identified four

factors relevant to determining whether a person has engaged in

disorderly conduct by making unreasonable noise: (1) the volume

of the noise; (2) the duration of the noise; (3) the time of day;

and (4) whether the noise was reported to the police.  <u>See</u> <u>Maerz</u>,

879 A.2d 1267; <u>Commonwealth v. Alpha Epsilon Pi</u>,

373 Pa.Super. 178, 540 A.2d 580 (1988).

  Here, plaintiff was making "lots of noise"[61] and by his

own admission was "loud."[62]  These noises were loud enough and

continued long enough that someone outside the home heard them

and called the 911 emergency line because of them.  Officers

Guerriere and Snyder heard these noises from outside the home

upon their arrival.[63]  Clearly, this was not a brief, "passing"

noise.  <u>See</u> <u>Maerz</u>, 879 A.2d at 1271.

  The events giving rise to this lawsuit occurred at

approximately 3:30 a.m., during the early morning hours when many

people are asleep.[64]  <u>Id</u>.  Indeed, plaintiff's girlfriend

---

[61] Undisputed Facts at paragraph 5.

[62] Undisputed Facts at paragraph 4.

[63] Undisputed Facts at paragraphs 2 and 8.

[64] Undisputed Facts at paragraph 2.

testified that she believed that officers responded to

plaintiff's home because she and plaintiff were making "lots of

noise" at "[t]wo o'clock, three o'clock in the morning...

surrounded by lots of senior citizens."[65]

Finally, as noted, the unidentified caller contacted

911 based on the noises that she heard--namely, a woman calling

for help.[66]  Thus, all four unreasonable noise factors, discussed

above, favor a finding that plaintiff made unreasonable noise.

Accordingly, the defendant officers had probable cause to believe

that plaintiff had engaged in disorderly conduct.[67]

Because the defendant officers had probable cause to

arrest plaintiff, he cannot establish that he was subject to

false arrest, false imprisonment, or malicious prosecution in

violation of the Fourth Amendment.  Accordingly, the defendant

---

[65]    Undisputed Facts at paragraph 5.

[66]    Undisputed Facts at paragraph 2.

[67]    It appears that plaintiff was charged with disorderly conduct for
fighting under 18 Pa.C.S. § 5503(a)(1) rather than disorderly conduct by
making unreasonable noise under 18 Pa.C.S. § 5503(a)(2).  See Exhibit L to
Undisputed Facts.  However, assuming without deciding that the defendant
officers lacked probable cause to arrest plaintiff for disorderly conduct by
fighting, plaintiff's arrest was nevertheless justified because, for the
reasons discussed above, the defendant officers had probable cause to arrest
him for disorderly conduct by making unreasonable noise.

        "As long as the officers had some reasonable basis to believe
[plaintiff] had committed a crime, the arrest is justified as being based on
probable cause.  Probable cause need only exist as to any offense that could
be charged under the circumstances."  Barna v. City of Perth Amboy,
42 F.3d 809, 819 (3d Cir. 1994) (emphasis added); see, e.g., Egolf v. Witmer,
526 F.3d 104, 108 n.8 (3d Cir. 2008); Paff v. Kaltenbach, 204 F.3d 425, 435
n.6 (3d Cir. 2000).  It is irrelevant to the probable cause analysis what
crime a suspect is eventually charged with.  Wright v. City of Philadelphia,
409 F.3d 595, 602 (3d Cir. 2005).

officers are entitled to qualified immunity, and I grant summary judgment in their favor on these claims.

### Excessive Force

Plaintiff's final Section 1983 claim is for excessive force in violation of the Fourth Amendment.  A Section 1983 claim for excessive force by a law enforcement officer is based on the Fourth Amendment protection from unreasonable seizures of the person.  Groman, 47 F.3d at 633 (citing Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443, 454 (1989)).  The use of excessive force is itself an unlawful seizure under the Fourth Amendment.  Couden v. Duffy, 446 F.3d 483, 496 (3d Cir. 2006).

To decide whether the challenged conduct constitutes excessive force, I must determine the objective reasonableness of the challenged conduct.  Graham, 490 U.S. at 397, 109 S.Ct. at 1872, 104 L.Ed.2d at 456; Couden, 446 F.3d at 496.  In making this determination, I must pay careful attention to the facts and circumstances of each particular case and consider the severity of the crime, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight.  Graham, 490 U.S. at 396, 109 S.Ct. at 1872, 104 L.Ed.2d at 455; Brown v. Rinehart, 325 Fed.Appx. 47, 50-51 (3d Cir. 2009); Sharrar v. Felsing, 128 F.3d 810, 821 (3d Cir. 1997).

Other relevant factors include whether the physical force applied was of such an extent as to lead to injury, the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the police officers' action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.  Estate of Smith v. Marasco, 430 F.3d 140, 150 (3d Cir. 2005); Sharrar, 128 F.3d at 822.

Because "police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation," I must consider the perspective of a reasonable officer on the scene rather than using the 20/20 vision of hindsight in evaluating reasonableness. Graham, 490 U.S. at 396-397, 109 S.Ct. at 1872, 104 L.Ed.2d at 455-456; Couden, 446 F.3d at 497.

Plaintiff argues that excessive force was used on him when defendant Officer Snyder deployed his taser twice and when an unidentified officer kicked plaintiff in the head.  Because I find that both of Officer Snyder's uses of the taser were reasonable exercises of force, and because plaintiff failed to identify which officer kicked him in the head, I grant summary

judgment to the defendant officers on plaintiff's excessive force
claim.

Taser Applications

Depending upon the circumstances, the application of a
taser may be a reasonable use of force.  Woods v. Grant,
665 F.Supp.2d 438, 445 (D.Del. 2009).  Here, Officer Snyder's two
uses of a taser on plaintiff were reasonable.

I first apply the three Graham factors: (1) the
severity of the crime; (2) whether the suspect poses an immediate
threat to the safety of the officers or others; and (3) whether
the suspect is actively resisting arrest or attempting to evade
arrest by flight.  490 U.S. at 396, 109 S.Ct. at 1872,
104 L.Ed.2d at 455.

First, although disorderly conduct is not a severe
offense, Morrison v. Board of Trustees of Green Township,
529 F.Supp.2d 807, 833 (S.D.Ohio 2007), the officers were
responding to a reported domestic dispute, a more serious--and
potentially volatile--scenario.

Second, when viewed from the perspective of a
reasonable officer on the scene, plaintiff posed an immediate
threat to the safety of the officers, Miss Davis and himself.[68]
Plaintiff was very angry that the officers were in his home and

---

[68]    The United States Court of Appeals for the Ninth Circuit has
identified the immediate threat to the safety of the officers or others as the
most important factor.  Smith v. City of Hemet, 394 F.3d 689, 702 (9th Cir.
2005).

told them that they would have to shoot him.[69]  Targets with
bullet holes were present in the residence, suggesting that
plaintiff might have a weapon.[70]  In addition, plaintiff ignored
the officers' instructions and headed to the unsecured second
floor, where he could barricade himself or obtain a weapon.[71]

Third, plaintiff was attempting to evade arrest by
flight when Officer Snyder fired the taser at him.  Plaintiff
continued to the second floor after Officers Guerriere and Snyder
told him to come downstairs.[72]  Plaintiff was resisting arrest at
the time of the second taser shock.  By failing to show his hands
when Officer Snyder told him to do so, plaintiff was resisting
arrest.  See, e.g., Brown v. Rinehart, 325 Fed.Appx. 47, 49
(3d Cir. 2009); Marvin v. City of Taylor, 509 F.3d 234, 246
(6th Cir. 2007); L.S.T., Inc. v. Crow, 49 F.3d 679, 685 n.10
(11th Cir. 1995).

The right to make an arrest or investigatory stop
necessarily carries with it the right to use some degree of
physical coercion or threat thereof to effect it.  Graham,
490 U.S. at 396, 109 S.Ct. at 1872, 104 L.Ed.2d at 455; accord
Mierzwa v. United States, 282 Fed.Appx. 973, 979 (3d Cir. 2008).

---

[69]    Undisputed Facts at paragraph 16.

[70]    Undisputed Facts at paragraph 17.

[71]    Id.

[72]    Undisputed Facts at paragraphs 15 and 19.

Even if a plaintiff is not armed, it is reasonable for law enforcement officers to employ multiple rounds of non-lethal force if necessary to effectuate an arrest.  Wargo v. Municipality of Monroeville, 646 F.Supp.2d 777, 786 (W.D.Pa. 2009).  The United States Court of Appeals for the Third Circuit has found the use of non-lethal force to be reasonable to arrest a suspect who is resisting arrest.

In Brown v. Rinehart, 325 Fed.Appx. at 49, 51, the defendant officers used reasonable force when they sprayed pepper spray on the plaintiff and delivered "stun blows" to plaintiff's head and knee to overcome his resistance.  In Mierzwa, 282 Fed.Appx. at 979, the Third Circuit held that it was reasonable for the officers to physically restrain plaintiff and to administer pepper spray in order to effectuate an arrest. Notably, the taser "is considered to inflict considerably less pain...than other forms of force."  Sanders v. City of Fresno, 551 F.Supp.2d 1149, 1168 (E.D.Cal. 2008); Beaver v. City of Federal Way, 507 F.Supp.2d 1137, 1143 (W.D.Wash. 2007).

Federal district courts in Pennsylvania have found use of a taser to overcome a suspect's resistance to be reasonable. In Gruver v. Borough of Carlisle, 2006 U.S.Dist. LEXIS 31448, *8, 13 (M.D.Pa. May 19, 2006), the court found that the defendant officers did not use excessive force where plaintiff was shocked three times with a taser.  Similarly, in Wargo, 646 F.Supp.2d at

787, the court stated that "it would not be deemed unreasonable for [the defendant officer] to have used his taser a second time when [plaintiff] mounted his last act of resistance by refusing to assume a position that allowed for his arrest."

I next apply the additional six factors identified by the Third Circuit in Sharrar v. Felsing, supra: (1) whether the physical force applied was of such an extent as to lead to injury; (2) the possibility that the persons subject to the police action are themselves violent or dangerous; (3) the duration of the police officers' action; (4) whether the action takes place in the context of effecting an arrest; (5) the possibility that the suspect may be armed; and (6) the number of persons with whom the police officers must contend at one time. 128 F.3d at 822.

First, although the force applied did lead to injury, plaintiff suffered only minor injuries from the officers' use of force: a mark from the Taser dart and a small scratch on the back of his head.[73]  See Wargo, 646 F.Supp.2d at 787.  Indeed, at the Easton Police Department, plaintiff denied sustaining any physical injuries.[74]  Plaintiff only later reported that his "tissues were swollen."[75]

---

[73]    Undisputed Facts at paragraph 30.

[74]    Undisputed Facts at paragraph 32.

[75]    McNeil Deposition at page 130.

- 34 -

Second, there was a significant possibility that plaintiff, the person subject to the police action, was himself violent or dangerous.  Officers responded to a reported domestic dispute involving plaintiff.  Moreover, as noted above, plaintiff was very angry that the officers were in his home and told them that they would have to shoot him.[76]  Targets with bullet holes were present in the residence, suggesting that plaintiff might have a weapon.[77]  In addition, plaintiff ignored the officers' instructions and headed to the unsecured second floor, where he could barricade himself or obtain a weapon.[78]

Third, the duration of the police officers' action was extremely brief.  Officer Snyder subjected plaintiff to two five second electric discharges from his taser, so plaintiff was exposed to the taser for a total of ten seconds.[79]  Fourth, the challenged actions took place in the context of effecting plaintiff's arrest.

Fifth, although plaintiff was not armed, Officer Snyder was "very fearful" that plaintiff could obtain a weapon on the second floor in a matter of seconds.[80]  Courts have approved the

---

[76]    Undisputed Facts at paragraph 16.

[77]    Undisputed Facts at paragraph 17.

[78]    Id.

[79]    Undisputed Facts at paragraphs 20-22.

[80]    Undisputed Facts at paragraph 17.

use of force to prevent suspects from fleeing officers to go to rooms in which the suspect might obtain weapons.

In Cox v. Childers, the district court held that the defendant officers acted reasonably in shooting the plaintiff with non-lethal beanbag shotgun rounds when plaintiff attempted to retreat to a bedroom where he might obtain weapons. Cox v. Childers, 2008 U.S.Dist. LEXIS 14132, *11 (C.D.Ill. February 26, 2008). Other courts have reached similar conclusions. See Ross v. Donkocik, 60 Fed.Appx. 409, 411 (3d Cir. 2003); Ramirez v. Dennis, 2002 U.S.Dist. LEXIS 10436, *21-22 (W.D.Mich. June 6, 2002).

Sixth, the requested backup had not arrived when plaintiff was shocked with the taser, so Officers Guerriere and Snyder were the only officers on the scene.[81] The two officers had to contend with both plaintiff and his girlfriend. Moreover, at the time of the taser applications, officers had not yet inspected the second floor, and it was entirely possible that other people might be upstairs.[82] Indeed, when officers later searched the second floor, they found an unnamed male in his twenties there.[83]

---

[81]    Undisputed Facts at paragraph 24; Police Report at page 5.

[82]    Undisputed Facts at paragraph 19.

[83]    Guerriere Testimony at pages 15-16; Snyder Testimony at pages 37, 38, and 40.

After carefully reviewing the facts and circumstances of Officer Snyder's two taser applications, I conclude, based upon the uncontested facts, that the taser uses did not constitute excessive force.  Accordingly, the defendant officers are entitled to qualified immunity and summary judgment on this claim.

<u>Head Injury</u>

Finally, plaintiff contends that one of the officers used excessive force by kicking him in the head.[84]  The only evidence in support of this contention is plaintiff's testimony in the related criminal proceeding (the summary appeal hearing) that "one officer looked at the other officer, and then he ran up the steps.  Before he put the handcuffs on me, he kicked me in the back of my head."[85]

---

[84]     Amended Complaint at paragraph 10; Plaintiff's Brief at page 7.

[85]     McNeil Testimony at page 50.

        Plaintiff cites pages 121-123 of his deposition transcript in support of his contention that one of the officers kicked him in the head. <u>See</u> Plaintiff's Brief at page 7.  However, plaintiff did not submit this transcript, and the portions of this transcript filed as Exhibit B to defendants' Undisputed Facts do not include these pages.

        Portions of a deposition transcript not filed with the district court cannot be considered by the court in deciding a motion for summary judgment.  <u>Allen v. Minnstar, Inc.</u>, 8 F.3d 1470, 1475 (10th Cir. 1993); <u>see</u> <u>Whitlock v. Duke University</u>, 829 F.2d 1340, 1343 (4th Cir. 1987).  "Because plaintiff failed to attach the relevant deposition transcripts... the Court is not able to consider them as evidence." <u>Daliessio v. DePuy, Inc.</u>, 76 Fair Employment Practices Cases (BNA) 206, 210 n.8 (E.D.Pa. 1998) (Robreno, J.); <u>accord</u> <u>Rahemtulla v. Hassam</u>, 539 F.Supp.2d 755, 767 n.7 (M.D.Pa. 2008).  Accordingly, I do not consider pages 121-123 of plaintiff's deposition transcript, which were not provided for this court's consideration.

Even if this evidence were sufficient to create a dispute concerning a material fact as to <u>whether</u> an officer kicked plaintiff in the head, defendants are still entitled to summary judgment because plaintiff has not provided any evidence as to <u>which</u> officer kicked him in the head.

Where the plaintiff fails to identify which defendant officer is responsible for the alleged excessive force, there is no evidentiary basis on which to hold any of the defendants liable.  <u>See</u> <u>Sharrar v. Felsing</u>, 128 F.3d at 821; <u>Howell v. Cataldi</u>, 464 F.2d 272 (3d Cir. 1972); <u>Taylor v. Brockenbrough</u>, 2001 WL 1632146, *2 (E.D.Pa. December 20, 2001) (Yohn, J.). "Even if the Court were to find that the unidentified officer used excessive force...there can be no § 1983 liability against an unidentified individual officer." <u>Munson v. City of Philadelphia</u>, 2009 WL 2152280, *3 (E.D.Pa. July 15, 2009) (Robert F. Kelly, S.J.) (quoting <u>Glass v. City of Philadelphia</u>, 455 F.Supp.2d 302, 367 (E.D.Pa. 2006) (Robreno, J.)).

In <u>Sharrar v. Felsing</u>, <u>supra</u>, plaintiffs brought a Section 1983 civil rights action against four police officers and the City of Sea Isle, New Jersey.  Among the causes of action was a claim for use of excessive force in the arrest of one of the plaintiffs, Ronald Sharrar, in violation of the Fourth Amendment.

In his deposition Mr. Sharrar alleged that during his arrest, his handcuffs were grabbed from behind and his arms were

lifted up from behind, causing his shoulder to come partially out
of the socket and injuring his shoulder.  Although plaintiff
could recognize all of the defendant officers, he was unable to
identify which police officers were in the police car with him at
the time of the alleged abuse.  In granting summary judgment in
favor of defendants, the district court held that Mr. Sharrar's
injuries could not be attributed to any of the defendant
officers.  128 F.3d at 821.

In affirming the grant of summary judgment, the United
States Court of Appeals for the Third Circuit held that because
plaintiff was unable to identify which police officers were in
the police car at the time of the alleged abuse, there was
therefore no evidentiary basis on which to hold any of the
defendants liable.  Id.

In Howell v. Cataldi, supra, plaintiff Henry Howell, a
diabetic who demonstrated symptoms of intoxication when he was
involved in an automobile accident, contends that in the process
of a police investigation of that accident, he was physically
assaulted in a Philadelphia police station.  464 F.2d at 273.
Plaintiff brought a civil rights action against the City of
Philadelphia, Philadelphia police officers Cataldi and Kinsella,
and others.  464 F.2d at 273, 277.

The thrust of plaintiff's complaint was that the
officers used unnecessary and excessive force under the mistaken

impression that he was uncooperative, when the reality was that
he was in the throes of some phase of a diabetic coma.  464 F.2d
at 275-276.  At trial the district judge directed a verdict for
the defendants.  464 F.2d at 273.  On appeal the United States
Court of Appeals for the Third Circuit treated the lawsuit as a
claim brought pursuant to 42 U.S.C. § 1983.  464 F.2d at 275.

At trial, plaintiff called witness McGraw, who was the
operator of the vehicle struck by plaintiff in the accident.
Plaintiff called Mr. McGraw as an eyewitness to the assault on
plaintiff at the police station.  464 F.2d at 279-280.

Mr. McGraw testified that there were six police
officers present, including defendants Cataldi and Kinsella.  He
testified that plaintiff Howell was handcuffed behind his back,
and there was an officer under each elbow holding him up under
his elbows.  Id.

One officer took his hands behind Mr. Howell's head and
smashed it to the counter.  One hit him in the stomach and he
went down on the floor, and the other officer had a blackjack and
hit Mr. Howell on the head with it.  One picked Mr. Howell and
one had a wooden club and started banging on his shins for a long
time.  Id.

The Third Circuit concluded that the force applied by
the participating officers "went far beyond the pale of
permissible police conduct" and violated universally accepted

standards of decency.  464 F.2d at 281.  However, the appeal court agreed with the district court that there was insufficient evidence to link officers Cataldi or Kinsella to the affray. 464 F.2d at 282.

The only evidence linking officers Cataldi and Kinsella to the beating was Mr. McGraw's testimony that one of the officers (Cataldi and Kinsella) "picked Mr. Howell and one had a wooden club and started banging on his shins."  Id. Specifically, the Third Circuit concluded that "this evidence was insufficient to identify Cataldi and Kinsella as participants.... There is no proof that Cataldi wielded the club or that Kinsella did; all that was said [by witness McGraw] was that one of the two did."  464 F.2d at 282-283.  (Plaintiff Howell remembered nothing of the incident or occurrences for ten days thereafter, allegedly because of his diabetic condition.)  464 F.2d at 273.

The Court of Appeals cited its decision in Negrich v. Hohn, 379 F.2d 213, 215 (3d Cir. 1967) where it dismissed a Section 1983 complaint as insufficient because the charge of a beating was made against the defendants generally and not against any particular defendant.  464 F.2d at 283.

In its Howell v. Cataldi decision the Third Circuit reasoned that "[m]ere presence of a person, when an assault and battery is committed by another, even though he mentally approves of it, but without encouragement of it by word or sign, is not

sufficient of itself to charge him as a participator in the assault."  464 F.2d at 282.

Accordingly, the Third Circuit concluded that the district court did not err when it directed a verdict in favor of defendant officers Cataldi and Kinsella because of plaintiff Howell's failure to make an appropriate identification.  464 F.2d at 284.

In Taylor v. Brockenbrough, supra, plaintiff brought a civil rights action against six named Philadelphia police officers for use of excessive force.  He alleged that while he was walking home from work, two police officers told him to stand facing a wall while one of the police officers proceeded to search him.  Following the search one of the police officers forcefully struck plaintiff in the back and side of his torso. 2001 WL 1632146 at *1.

Mr. Taylor fell to the ground.  While on the ground, this officer kneed plaintiff in the lower back and side of his torso, causing him to strike his head against the wall.  Because plaintiff was facing the wall during most of the incident, he was unable to get a good look at the officers' faces.  Id.

In granting defendants' motion for summary judgment, the United States District Court for the Eastern District of Pennsylvania stated that "Courts in this circuit have held that in order to establish a civil rights violation, those responsible

- 42 -

for the alleged violating conduct must be specifically identified."  2001 WL 1632146 at *2 (citing cases).

Citing Sharrar, supra, District Judge William H. Yohn, Jr. held that because neither Mr. Taylor nor any witness had been able to identify the exact police officer responsible for plaintiff's alleged beating, there was no evidence upon which to hold any of the defendants liable for the alleged violation of Mr. Taylor's rights.  Judge Yohn stated that "[a]sking a jury to make this determination would be tantamount to asking it to perform guesswork.  Defendants have the right not to be tried under such circumstances."  Id.

Because plaintiff's deposition testimony established that only one police officer engaged in the allegedly violating conduct, and the evidence established that there were two officers equally as likely to have engaged in the offending conduct, the district court found the evidence insufficient for plaintiff to avoid summary judgment.  Id.

In Munson v. City of Philadelphia, supra, plaintiff Idris Munson brought a Section 1983 civil rights action against the City of Philadelphia, six named police officers and others for use of excessive force in attempting to serve an arrest warrant at Mr. Munson's residence on Larry Brown for aggravated assault.  Plaintiff Munson alleges that one of the officers used excessive force when plaintiff was pushed up against his couch,

- 43 -

"flipped" onto the floor, and pinned to the ground.
2009 WL 2152280 at *1.

He further claims that one officer jumped on his back
with his knees and "a bunch of other cops" came on him and held
him.  He was then put in handcuffs and placed on his couch.  Id.

Mr. Munson claimed injuries from the alleged excessive
force used against him during his own arrest.  These included a
broken right index finger, and injuries to his right leg, wrist
and shoulder.  Id.  Plaintiff was unable to identify any of the
individual officers that he claimed used excessive force against
him.  2009 WL 2152280 at *3.

In granting defendants' motions for summary judgment,
Senior District Judge Robert F. Kelly held that even if the court
were to find that the unidentified officer used excessive force
when he arrested Mr. Munson, there can be no Section 1983
liability against an unidentified individual officer.  Id.
(citing Glass v. City of Philadelphia, supra.)

Senior Judge Kelly stated that liability of an
individual officer must be based on his own acts or omissions,
and not those of other individual officers.  Id. (citing Agresta
v. City of Philadelphia, 801 F.Supp. 1464, 1468 (E.D.Pa. 1992)).
Quoting the Third Circuit, Judge Kelly stated that a defendant in
a civil rights action must have had personal involvement in

committing the alleged violation.  2009 WL 2152280 at *3 (citing

Rode v. Dellarciprete, 845 F.2d 1195 (3d Cir. 1988)).

In Glass v. City of Philadelphia, supra, plaintiffs

Reuben Glass, his son Kareem Glass, and their family friend Jane

Malloy filed a Section 1983 civil rights action against the City

of Philadelphia and nineteen individual police officers for

excessive force and other claims.  Plaintiffs allege that Kareem

Glass, then a minor, was beaten by Philadelphia police officers

while playing at a construction site.  As a result of that

incident Reuben Glass brought a lawsuit on behalf of Kareem,

against the City of Philadelphia and police officers in the Ninth

District, which lawsuit eventually settled.  ("Glass I").

455 F.Supp.2d at 310-311.

Subsequently, plaintiffs Mr. Glass, Kareem and

Ms. Malloy filed another lawsuit ("Glass II") contending that for

nearly two-and-a-half years members of the Philadelphia Police

Department's Ninth District harassed and intimidated the Glasses

in retaliation for filing the Glass I lawsuit against the City of

Philadelphia and certain police officers.  Allegedly, members of

the Ninth District, at various times, stalked, harassed, falsely

incriminated and threatened to kill plaintiffs in retaliation for

the Glasses exercising their civil rights.  455 F.Supp.2d at 311.

Plaintiff Malloy alleges that on a subsequent occasion

she observed two officers draw their weapons and approach a car

in which Reuben and Kareem Glass were driving and which they had stopped in front of the Glass home.  According to both Glasses and Jane Malloy, one of the officers pointed his gun at Reuben Glass's head, and the other officer pointed his gun at Kareem Glass's head.  The officers allegedly yelled obscenities at the father and son and threatened to kill them.  455 F.Supp.2d at 319-320.

Ms. Malloy, who had just arrived at Mr. Glass's house prior to the incident, testified that she witnessed the incident and attempted to intervene, asking the officers why they were arresting Mr. Glass and his son.  According to Ms. Malloy, as she approached the scene, another unnamed officer drew his weapon, pointed it at her, called her an obscene name and threatened to kill her if she didn't step aside.  455 F.Supp.2d at 320.

At a trial without jury, District Judge Eduardo C. Robreno found in favor of the defendants and against plaintiff Jane Malloy on her excessive force claim.  In his opinion in support of his verdict Judge Robreno stated, "Assuming that an officer did in fact point a gun at Ms. Malloy, the identity of the officer who allegedly pointed the gun at her is unknown. Ms. Malloy testified at trial that she could not identify the officer who pointed a gun at her...."  455 F.Supp.2d at 366.

Judge Robreno concluded that "[t]he Court may not find liability against an unidentified individual."  Id.  He reasoned

that "[e]ven if the Court were to find that the unidentified officer used excessive force when he allegedly pointed a gun at Ms. Malloy, there can be no § 1983 liability against an unidentified individual officer."  455 F.Supp.2d at 367.

I am, of course, bound to follow the Opinions of the United States Court of Appeals for the Third Circuit in <u>Sharrar v. Felsing</u>, <u>Rode v. Dellarciprete</u>, <u>Howell v. Cataldi</u>, and <u>Negrich v. Hohn</u>.  I also find the Opinions and analysis of my colleagues on the United States District Court for the Eastern District of Pennsylvania in <u>Taylor v. Brockenbrough</u>, <u>Munson v. City of Philadelphia</u> and <u>Glass v. City of Philadelphia</u> to be persuasive, well-reasoned, and consistent with the foregoing Third Circuit authority.

Therefore, although I find plaintiff Elijah McNeil's claim of the use of excessive force by an unidentified Easton police officer who allegedly kicked him in the back of the head to be serious and troubling, I am constrained to grant defendants' motion for summary judgment because plaintiff has not provided any evidence as to <u>which</u> officer kicked him in the head. And as held in the five cases discussed above, where the plaintiff fails to identify which officer is responsible for the alleged excessive force, there is no evidentiary basis on which to hold any of the defendants liable, <u>Sharrar</u>, <u>supra</u>, and <u>Taylor</u>, <u>supra</u>; and even if the court were to find that the unidentified

officer used excessive force, there can be no Section 1983
liability against an unidentified individual officer, Howell,
supra, Munson, supra, and Glass, supra.

Accordingly, I grant defendants' motion for summary
judgment on plaintiff's claim of use of excessive force by an
unidentified officer who allegedly kicked him in the head while
he was being arrested.

### Monell Claims[86]

Absent an underlying constitutional violation by an
agent of the municipality, the municipality itself cannot be held
liable under Section 1983.  There can be no "award of damages
against a municipal corporation based on the actions of one of
its officers when...the officer inflicted no constitutional
harm."  City of Los Angeles v. Heller, 475 U.S. 796, 799,
106 S.Ct. 1571, 1573, 89 L.Ed.2d 806, 811 (1986); Hill v. Borough
of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006); Grazier v. City of
Philadelphia, 328 F.3d 120, 124 (3d Cir. 2003).

Here, for the reasons discussed above, the defendant
officers were granted summary judgment on each of plaintiff's
Section 1983 claims against them.  Therefore, plaintiff's
derivative Monell claims against defendant City of Easton must
also fail.  Accordingly, I grant summary judgment to defendant
City of Easton on plaintiff's Monell claims against it.

---

[86]   Monell v. Department of Social Services of the City of New York,
436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

## **State Law Claims**

Claims for false arrest, false imprisonment, and malicious prosecution under Pennsylvania law each require a lack of probable cause. Mills v. City of Harrisburg, No. 09-1180, 2009 U.S.App. LEXIS 24094, *9, 2009 WL 3497617, *3 (3d Cir. October 30, 2009); Murphy v. Bendig, 232 Fed.Appx. 150, 153 (3d Cir. 2007); Sheedy v. City of Philadelphia, 184 Fed.Appx. 282, 284 (3d Cir. 2006).

As noted above in my discussion of plaintiff's corresponding claims under Section 1983, the undisputed facts demonstrate that the defendant officers had probable cause to arrest plaintiff. Accordingly, plaintiff cannot succeed on his state law false arrest, false imprisonment, and malicious prosecution claims, and I grant summary judgment to defendants on these claims.

A police officer may be held liable for assault and battery when the force used in making an arrest is unnecessary or excessive. Renk v. City of Pittsburgh, 537 Pa. 68, 76, 641 A.2d 289, 293 (1994); see Mills, 2009 U.S.App. LEXIS 24094 at *9-10, 2009 WL 3497617 at *3; DeBellis v. Kulp, 166 F.Supp.2d 255, 279 (E.D.Pa. 2001) (Van Antwerpen, J.).

In my discussion of plaintiff's Fourth Amendment excessive force claim above, I found that defendant Officer Snyder's two taser applications did not constitute excessive

force.  Accordingly, plaintiff cannot succeed on his assault and
battery claim based on defendant Officer Snyder's two uses of the
taser.

I also grant summary judgment to defendants on
plaintiff's assault and battery claim based on plaintiff's
contention that one of the officers kicked him in the head.

Under Pennsylvania law, the plaintiff "must establish
that a particular defendant's negligence was the proximate cause"
of his injuries to be able to recover.  Skipworth ex rel Williams
v. Lead Industries Association, Inc., 547 Pa. 224, 231,
690 A.2d 169, 172 (1997) (citing Cuthbert v. City of
Philadelphia, 417 Pa. 610, 209 A.2d 261 (1965)).

However, the Pennsylvania Supreme Court has adopted the
alternative theory of liability defined in Section 433B(3) of the
Restatement (Second) of Torts.  See Skipworth, 547 Pa. at 234-
235, 690 A.2d at 173-174; Snoparsky v. Baer, 439 Pa. 140, 144,
266 A.2d 707, 709 (1970); City of Philadelphia v. Lead Industries
Association, Inc., 994 F.2d 112, 127-128 (3d Cir. 1993).

That section provides:

> Where the conduct of two or more actors is
> tortious, and it is proved that harm has been
> caused to the plaintiff by only one of them, but
> there is uncertainty as to which one has caused
> it, the burden is upon each such actor to prove
> that he has not caused the harm.

Restatement (Second) of Torts § 433B(3).

Thus, for alternative liability to apply, the conduct of at least two actors must be tortious.  See <u>Pennfield Corporation v. Meadow Valley Electric, Inc.</u>, 413 Pa.Super. 187, 194-195, 604 A.2d 1082, 1085-1086 (1992); <u>Howell v. Cataldi</u>, 464 F.2d at 283; <u>Warnick v. NMC-Wollard, Inc.</u>, 512 F.Supp.2d 318, 335 (W.D.Pa. 2007) (Hardiman, J.).

Here, there is, at most, evidence that <u>one</u> unidentified officer, out of several officers present, kicked plaintiff in the head.[87]  Alternative liability cannot attach where only one unidentified defendant committed a tort and the other defendants are blameless.  See <u>Pennfield Corporation</u>, 413 Pa.Super. at 194-195, 604 A.2d at 1085-1086; <u>Warnick</u>, 512 F.Supp.2d at 335.

Accordingly, I grant summary judgment to defendants on plaintiff's pendent state assault and battery claim based on plaintiff's contention that one of the officers kicked him in the head.

## <u>CONCLUSION</u>

For all the foregoing reasons, I grant Defendants' Motion for Summary Judgment, dismiss plaintiff's Amended Complaint in its entirety, and enter judgment in favor of defendants and against plaintiff on all claims.

---

[87]    See McNeil Testimony at page 50.

- 51 -